GREEN LAKE COUNTY, Respondent, vs. WAUPACA COUNTY, Appellant.

*January 8—March 11, 1902.*

*Appeal and error: Notice of appeal: Duplicity: Appealable orders: "Adverse party:" Compensation of attorney appointed for indigent persons: Preparation for trial: Jurisdiction: Collateral attack: "Proceeding:" Sheriff's fees: Clerk's fees: Counties, liability for expenses on change of venue: "Judgment roll:" Taxing costs.*

1. An order certifying to the compensation of defendant's attorney under sec. 4713, Stats. 1898 (providing for appointment of attorneys for indigent defendants in criminal actions, and that

their compensation be fixed by the court), and an order taxing in favor of one county and against another the expenses of a criminal action arising on a change of venue, pursuant to secs. 2940, 2941, are not orders made in the action, but each is an order arising in a separate special proceeding growing out of the action, affecting different parties, and an appeal therefrom, both orders being included in one notice, is bad for duplicity.

2. An order refusing to review the taxation of such expenses is appealable under sec. 3069, Stats. 1898, providing for appeals from a final order affecting a substantial right made in a special proceeding.

3. On appeal from proceedings had under sec. 4713, Stats. 1898, fixing the compensation of an attorney appointed to defend an indigent person charged with a crime, the attorney, being a party in interest, is the "adverse party" on whom, in order to perfect the appeal, the notice required by sec. 3049 must be served.

4. Under sec. 4713, Stats. 1898, providing that the compensation of attorneys appointed to defend indigent persons accused of crime "shall in no case exceed fifteen dollars per day for each day actually occupied in such trial or proceeding," the court has no power to make allowance for days spent out of court in preparation for trial.

5. Where, on the face of an order certifying such compensation, it appears that the time for which compensation has been allowed was, in part, spent out of court in the preparation for trial, the lack of jurisdiction in that respect appears on the face of the order, and such order may be reviewed on an appeal from an order made pursuant to secs. 2940, 2941, Stats. 1898, taxing such compensation as part of the expenses arising out of a change of venue.

6. The word "proceeding" as used in sec. 4713, Stats. 1898, is used to differentiate a "criminal proceeding" from a "criminal action," and does not warrant allowance for days spent out of court in preparation for trial, on the ground that they are spent in the "proceeding."

7. Under sec. 4713, Stats. 1898, where the arraignment of an indigent defendant had taken place and the pleas had been entered before the appointment of the attorney, and, on the day the case was called for trial, a *nolle* was entered, no more than one day can be legally allowed to the attorney.

8. Where on appeal from the taxation of the expenses arising out of a change of venue, taxed pursuant to secs. 2940, 2941, Stats. 1898, it appears from the record that the sheriff, in making out

his return for the services of subpœnas, disregarded subd. 2, sec. 731, Stats. 1898 (providing that travel in making service of all process, except criminal warrants, is to be computed *in all cases* from the court house of the county in which service is made), and it is impossible to determine from the record the amount of the illegal charges for travel, a retaxation in that respect will be ordered.

9. Under sec. 2940, Stats. 1898, providing that, in case of a change of venue, the county in which the action was commenced shall pay to the county in which the same shall be tried "the expenses arising out of the change of venue," a charge for thirty-one petit jurors at $2 per day, and the court reporter one day $10, is unauthorized, where in a criminal action in which the venue was changed, it appeared that a *nolle* was entered on the first day of the term.

10. The clerks of the circuit courts take their offices *cum onere*, and compensation for all services performed by them within the scope of their official duties has no foundation unless it finds express warrant in the law.

11. Under sec. 747, Stats. 1898, regulating fees of the clerk of the circuit court, there is no warrant for the clerk taxing, in a criminal action, for "issuing witnesses' affidavits" proving their mileage and attendance, it being the duty of the witnesses to prepare such affidavits, and if the clerk administers the oath, it is a service for the witness and not for the state.

12. In such case there is no warrant for taxing as fees of such clerk, "issuing fifty-four receipts for certificates $13.50, and filing same, $5.40;" sec. 4060, Stats. 1898, providing that the witness who receives such certificate shall receipt for the same, but provides for no fee to the clerk therefor.

13. Neither is there warrant to tax as part of the expenses arising out of a change of venue, clerk's fees for issuing and filing jurors', sheriff's, clerk's and reporter's certificates. They are part of the regular business of a jury term, which is in no way affected or enlarged by the presence of the foreign case on the calendar.

14. In the absence of any statute authorizing statements signed by the district attorney, certifying to the number of days attendance and miles traveled for each witness, there is no warrant for the clerk to include in his fee bill a charge for filing such statements.

15. The term "judgment roll" applies only to civil actions, and in taxing against a county the expenses arising out of a change

of venue in a criminal action, it is error to allow the clerk for making up the same.

16. There is no warrant for "taxing bill of costs" except in civil actions, and the only charge authorized therefor is twenty-five cents. It is therefore error to make an allowance of $2.50 therefor in taxing the .expenses arising out of a change of venue in a criminal action.

APPEAL from an order of the circuit court for Green Lake county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

An information was filed in the circuit court for Waupaca county charging five defendants with assault with intent to rob. Upon affidavits of prejudice made by the defendants, the venue of the action was changed to Green Lake county, and afterwards, upon affidavits of poverty, E. P. Finch was appointed as counsel to defend two of the defendants, and Henry Fitzgibbon to defend the remaining defendants. The case was never brought to trial. It was continued by consent at one term, and on the first day of the following term, to wit, June 11, 1900, a *nolle* was entered, with the consent of the court, and the defendants were discharged. After this discharge, Mr. Finch presented his itemized bill for services amounting to $315, to which the court affixed the following certificate:

"June 12th, 1900. Above bill allowed at $15 per day for eighteen days, $270, which sum I certify to be a reasonable compensation for such services.

"By the Court:

"GEORGE W. BURNELL,

"Judge."

Mr. Fitzgibbon also presented his bill, amounting to $412.50, to which the trial judge added a certificate in substantially the same form as the certificate attached to Mr. Finch's bill; the allowance, however, being for twenty-four and one-half days, at $15 per day, amounting to $367.50. On the 28th day of July, 1900, the circuit judge, upon notice

Green Lake Co. v. Waupaca Co. 113 Wis. 425.

given to E. E. Browne, district attorney of *Waupaca County,* taxed a bill of costs, under the provisions of secs. 2940, 2941, Stats. 1898, in favor of *Green Lake County* and against *Waupaca County,* covering the expenses of said criminal action so removed to *Green Lake County,* which bill, with the amount claimed and the amount allowed, is as follows:

June Term, 1900.

| | | Proposed. | Allowed. |
|---|---|---|---|
| 31 petit jurors, 1 day each, at | $ 2 00 | $ 62 00 | $ 62 00 |
| 1 sheriff, 1 day, at | 3 00 | 3 00 | 3 00 |
| 1 undersheriff, 1 day, at | 3 00 | 3 00 | 3 00 |
| 2 deputy sheriffs, 1 day each, at | 2 00 | 4 00 | 4 00 |
| 1 clerk, 1 day, at | 3 00 | 3 00 | 3 00 |
| 1 deputy clerk, 1 day, at | 3 00 | 3 00 | 3 00 |
| 1 reporter, 1 day, at | 10 00 | 10 00 | 10 00 |
| 53 witnesses, 92 days, at | 1 50 | 138 00 | 141 00 |
| 53 witnesses, 13,726 miles traveled, at | 04 | 549 04 | 555 76 |
| 1 witness, by order of court, paid | | 20 00 | 20 00 |
| Attorney's fees: | | | |
| Byron Park, 7 days, at | 15 00 | 105 00 | 105 00 |
| Henry Fitzgibbon, 24½ days, at | 15 00 | 367 50 | 367 50 |
| Earl P. Finch, 18 days, at | 15 00 | 270 00 | 270 00 |
| Sheriff's fees on subpœnas: | | | |
| Sheriff White traveled 4,507 miles, at | 10 | 450 70 | 414 40 |
| Sheriff White served 58 times, at | 25 | 14 50 | 14 50 |
| Sheriff Peterson traveled 770 miles, at | 10 | 77 00 | 77 00 |
| Sheriff Peterson, car fare on service of subpœna | | 88 | 88 |
| Sheriff Peterson, 18 services, at | 25 | 4 50 | 4 50 |
| Clerk's fees, Green Lake county | | 101 35 | 105 00 |
| Total | | $2,186 47 | $2,149 04 |

It will perhaps be noticed, in the footing of the amounts allowed upon the bill, that the total sum allowed, to wit, $2,149.04, does not seem to be entirely accurate, when the different items allowed are footed. The difficulty probably arises from some mistake in the figures as brought to this court, but, as it makes no difference with the disposal of the case, no further attention will be paid to the inaccuracy.

Upon the hearing of this proceeding to tax the costs before

the judge, the district attorney appeared and offered written objections to many of the items, as follows:

"He objects to the taxation of 31 petit jurors, 1 day each, at $2 a day, $62, on the ground that said trial was not begun, and was dismissed before any jury were impaneled, on the first day of court, to wit, the 11th of June, 1900, and that the court did not begin until 2 o'clock p. m. of said day, and it was understood that no jury case would be held on that day. He objects to the item, Reporter, 1 day, $10, for the same reason as stated above. He objects to the taxation of the items, 53 witnesses, 1 day, at $1.50 per day, $138, and 53 witnesses, traveled 13,726 miles, at four cents per mile, $549.04, on the ground that most of the defendants' witnesses, as shown by the subpœnas, were subpœnaed for June 12, 1900, at 2 p. m., and said case was dismissed June 11, 1900, at 3 p. m., and that said witnesses were not in attendance at the trial of said action the number of days specified, and did not travel the number of miles therein specified. He also objects to the item, 1 witness, by order of the court, $20, on the ground that said witness was not in attendance at the trial of said action. He objects to the items, Henry Fitzgibbon, 24½ days, $15 per day, $367.50, and Earl P. Finch, 18 days, $15 per day, $270, on the ground that said attorneys did not participate in the trial of said case, the same never having been tried, and also because said fees are exorbitant. He further objects to the item, Sheriff White, traveled 4,507 miles, at 10 cents a mile, $450.70, on the ground that Sheriff White did not travel the number of miles specified, and that in making the number of miles he computed the distance from Oshkosh to the place where each witness was subpœnaed, when in fact many of the witnesses resided in the same place, and were subpœnaed at the same time, or could have been subpœnaed at the same time. He also objects to that part of said item in regard to witnesses subpœnaed in *Waupaca County* for the reason that the sheriff of *Waupaca County* receives a salary, and is by law compelled to serve all criminal process within said county free of charge, being compensated by the salary for performing such work; also on the ground that said Sheriff White's fees are exorbitant and unlawful. He also objects to the item, clerk's fees, *Green*

*Lake County,* $101.35, on the ground that said fees are exorbitant and not lawful."

But his objections were all overruled.

No further proceedings were taken in court until February, 1901, when Mr. Browne, on behalf of *Waupaca County,* by direction of the board of supervisors, moved the court to review and modify or to set aside the taxation as made upon his affidavit, setting forth at length the proceedings in the criminal action, and showing that no trial thereof was ever had; that the case was continued at the first term of court in *Green Lake County,* and *nolled* on the first day of the following term; that the allowances made to the attorneys Finch and Fitzgibbon were made without notice to the district attorney of *Green Lake County;* that upon the taxation of the costs and expenses of the trial he made the objections hereinbefore set forth, and that said objections were overruled, to which ruling he excepted; that Sheriff White, named in the bill of costs, was the sheriff of Winnebago county, Wisconsin, and that, in computing the number of miles which he traveled, said sheriff computed the same from Oshkosh, instead of from the county seat of the county in which the service was made; that the only times the attorneys appointed to defend said defendants appeared in court were on the day when they were appointed and on the day when the case was *nolled;* that the county board of *Waupaca County* disallowed a considerable number of items in the said bill, and authorized him, the said Browne, to investigate the matter, and take an appeal to the supreme court, if advisable. Attached to said affidavit were copies of all the papers and files used in the said taxation of costs. This motion was opposed by the district attorney of *Green Lake County,* but no affidavit denying the facts set forth in Mr. Browne's affidavit was filed, but simply an affidavit showing that, at the time the motion to review and set aside the taxation was made, a *mandamus* proceeding had been commenced by *Green Lake County*

against *Waupaca County* to compel it to pay said bill, and an alternative writ had been issued and served upon a considerable number of said supervisors before service of the order to show cause upon the motion to review said taxation. Upon the hearing of the motion to review, the same was denied and the taxation made by the judge was affirmed on the 2d day of March, 1901. From this order *Waupaca County* appealed, and in the notice of appeal included, also, a statement that it appealed from the two orders certifying to the compensation of Messrs. Finch and Fitzgibbon as attorneys for the defendants.

*Edward E. Browne,* attorney, and *John H. Brennan,* of counsel, for the appellant.

For the respondent there was a brief by *Fred Engelbracht, Jr.,* district attorney, and *Perry Niskern,* of counsel, and oral argument by *Mr. Niskern.*

WINSLOW, J. Counsel for appellant seem to have the idea that the orders certifying to the compensation of the defendants' attorneys under Stats. 1898, sec. 4713, and the order taxing the expenses of the trial under secs. 2940 and 2941, are all orders made in the criminal action, and hence that they may all be included in one notice of appeal, under Stats. 1898, sec. 3049. In this, counsel certainly are in error. Neither the proceeding to fix the compensation of counsel, nor the proceeding to tax costs in favor of one county against the other, has any real connection with the criminal action. They both arise out of such action, it is true, but neither of them concerns the defendants in the criminal action, or the issues in that action, in the least. They are plainly special proceedings growing out of the action. In the proceedings to fix the compensation of the attorney, the parties interested are the attorney whose compensation is fixed, and the county which must pay that compensation. In the proceedings to tax the expenses of the trial, the parties interested are the

county in which the trial is had, and the county in which the action originated. The parties are not the same, therefore, in the two proceedings; and it is elementary that final orders in two different proceedings, affecting different parties, cannot be appealed from by the same notice of appeal. Such an appeal would be bad for duplicity if the notice were served on all the parties interested. In the present case, however, there was no service of the notice of appeal on Mr. Finch or Mr. Fitzgibbon. The statute requires the notice of appeal to be served on the "adverse party." Sec. 3049. As the last-named gentlemen are the adverse parties in the proceedings to fix their compensation, there is really no appeal here from the orders fixing compensation of the attorneys, but only an appeal from the order refusing to review the taxation of costs. This order is plainly a final order affecting a substantial right in a special proceeding, and hence is appealable, under sec. 3069, Stats. 1898, and this appeal we will now consider.

1. The most serious objection made to the bill as taxed is to the items of attorney's fees to Mr. Finch and Mr. Fitzgibbon for defending the accused men. The case was never brought to trial, yet one attorney was allowed $270 for eighteen days' services, and the other $367.50 for twenty-four and one-half days' services. The statute provides (sec. 4713, Stats. 1898) that the compensation certified by the court "shall in no case exceed fifteen dollars per day for each day actually occupied in such trial or proceeding." The attorneys were not appointed until after the venue was changed and the case was in *Green Lake County*. Mr. Fitzgibbon's itemized bill shows that he was in court in Dartford on three different days, viz., January 22d, the day on which he was appointed, and on June 11th and 12th, while the remainder of the time charged for was spent out of court, looking up witnesses, preparing for trial, making brief, and consulting with Attorney Finch. In the case of Mr. Finch, the bill shows

very much the same state of facts; only two days being spent in court; one of them being the day when the case was *nolled,* and one the following day, and the remaining time being employed in looking up and examining witnesses and preparing for trial. The appellant's claim is that, under the statute, no allowance can be made to any attorney, save for days actually occupied in court in the trial, and hence that the court erred in allowing for days spent out of court in preparation for the trial. On the other hand, it is claimed that days spent by the attorney in preparation of the trial should really be considered a part of the trial, because preparation is necessary for every trial, and a lawyer who did not prepare would fail in his duty to the prisoner and to the court. Also it is urged that, the orders certifying to the compensation of attorneys not being before us upon this appeal, they must be considered as *res adjudicata;* in other words, that the question is settled by those orders, and not to be opened here. If the orders in question certified that any given number of days had been actually spent by the attorney in the trial, and that he was entitled to $15 per day therefor, it is difficult to see how the amount so allowed and paid by *Green Lake County* could be attacked collaterally on appeal from the taxation of costs. But the orders are not of this nature. As will be seen by reference to the statement of the case, they do not state or decide that any given number of days were spent in the trial of the case, but simply say that "the above bill is allowed" at $15 a day for so many days, thus making the bill a part of the order. Turning to the bill, we find that all but two or three of the days allowed for were spent out of court. So the allowance amounts simply to an allowance of $15 per day for a large number of days, all but two or three of which were spent outside of the court. The court has only power to make allowance for days actually occupied in the trial. It has no jurisdiction to go further. If it makes an order which appears on its face to

be for days spent in something else beside "the trial," that order is void, because there is no jurisdiction to make it; and, when the lack of jurisdiction appears on the face of the proceeding itself, it can be taken advantage of collaterally. It appearing here, upon the face of the orders themselves, that most of the time certified by the judge was time spent out of court in preparing for trial, the question arises whether such time can be called, in any proper sense, time "actually occupied in such trial." The desirability, nay, the absolute necessity, of preparation out of court before entering upon the trial of any case, must be admitted, but that is not the question here. The fact that the practice among trial judges has been quite general to allow attorneys some reasonable time for preparation may also be admitted; but, if the law be not doubtful in terms, such practice, however long continued, is of no moment. We are bound to say that the statute seems entirely free from ambiguity or doubt. It says, in effect, that whenever, in any criminal action or proceeding, any attorney shall defend an indigent prisoner by order of the court, the county in which such action or proceeding may arise or be pending shall only be liable to pay such sum as the trial court shall certify to be reasonable, not exceeding in any case $15 per day for "each day actually occupied in such trial or proceeding." A day spent in the office or in hunting up witnesses is not a day spent in the trial, nor can it be made so by any torturing of language. It is suggested that such time may be time spent in the "proceeding," and so may be allowed for, but this claim is untenable. As we have just seen, the word "proceeding" is used three times in the section. In the first two instances it is used in connection with the words "criminal action." It is evident in these two instances that it indicates something in the nature of a criminal action, but distinguishable therefrom, such as a proceeding to punish for criminal contempt; in other words, the word is here used to differentiate a "criminal proceeding"

from a "criminal action." There is certainly a very strong
presumption that a word used three times in a given section,
of half a dozen lines, is used in the same sense every time.
There would need to be some quite plain indication that it is
used with a different meaning in one instance, to justify a
court in applying such different meaning. There is abso-
lutely nothing in the present case to indicate a change of
meaning in the section before us, except that the word is used
in connection with the words "such trial," in the last instance,
instead of in connection with the words "criminal action."
We do not think this a sufficiently cogent circumstance to in-
dicate that a change of meaning was intended; hence we
conclude that there is no warrant for the allowance of days
spent in preparing for trial out of court, on the ground
that they are days spent in the "proceeding." It may be said
that this is a hard rule, and so, in some respects, it is. It is
undeniably a sacrifice for a lawyer of standing and ability
to devote himself to the defense of an indigent person charged
with crime, and spend a number of days in preparing for
trial, at the expense of his other business, and receive pay
only for the days spent in the actual trial. But such lawyers
will remember that they are officers of the court, bearing a
commission from the state; that they are admitted to the
ranks of the bar not only that they may practice their pro-
fession on behalf of those who can pay well for their services.
but that they may assist the courts in the administration of
justice. Every public-spirited, right-minded citizen recog-
nizes that he must work at times for the good of the public
without reward or hope of reward. In the defense of indigent
persons the good lawyer finds his opportunity to do this kind
of labor, and he should do it cheerfully, taking the small fee
given by the law, without complaint, and remembering that
his best reward is the sense of a public duty faithfully per-
formed. The attempt to obtain pay for day after day spent
in "interviewing witnesses" and "looking up the law," under

the claim that these are days spent in the trial, cannot be for a moment approved. No way is perceived in which, with due regard to the statute, more than one day could be legally allowed to either of the attorneys in this case, namely, the day upon which the cases were called for trial, and *nolles* entered. The fact appearing that the arraignment had taken place and the pleas entered before the appointment of the attorneys, this is the only day which by any course of reasoning can be called a day actually occupied in the trial of the case.

2. The next important item, the allowance of which is alleged as erroneous, is the charge for the services of Sheriff White for serving subpœnas on witnesses, amounting to $428.90. Most of this charge is composed of mileage for 4,144 miles traveled, at ten cents per mile. There were a large number of subpœnas issued in the case, and many witnesses, living in various counties, subpœnaed. Sheriff White, of Winnebago county, served most of the subpœnas, presumably as a matter of convenience to defendants' counsel, one of whom lived at Oshkosh. It is entirely impossible for us to tell, from the subpœnas and their returns, or from the sheriff's itemized bill, how much of Sheriff White's claim is illegal; but that a considerable part of it is seems entirely certain. It is true that the sheriff filed his affidavit to the effect that he served all the subpœnas, which were in his hands for service and which could be served at the same time, at the same time, and upon all persons who could be served upon the same journey, upon the same journey; but there is another provision of the statute as to sheriff's fees, which has been disregarded. Subd. 2, sec. 731, Stats. 1898, provides that travel in making service of all process, except criminal warrants, is to be computed *in all cases* from the court house of the county in which service is made. While it does not certainly appear in the present case where the sheriff started in computing his travel, it does appear that he did not follow the statute in his computation. Thus, upon one subpœna,

which was served upon a witness residing in Milwaukee, there is a charge of 168 miles' travel; and there are other instances where it is equally apparent that the travel was computed from some point other than the county seat of the county where service was made. Furthermore, it is stated positively in the affidavit of Mr. Browne that Sheriff White computed the number of miles traveled in each instance from Oshkosh to the place of service, and we find no denial of this statement anywhere in the record. But as has been said, it is impossible for us to say, from anything in the record, how great the overcharge in this respect is, and hence the amount which must be deducted from the bill cannot be determined upon this appeal.

3. The next two items to which objection is made are the charges for thirty-one petit jurors, one day, at $2 per day, $62, and reporter, one day, $10, and these may be considered together. There seems to be no warrant for either of them. The case was *nolled* on the first day of the regular jury term of court in June. A jury was in attendance for the regular work of the term, but not one of them was called to sit in this case; nor were the services of a reporter needed or utilized. To say that such charges as these are "expenses arising out of the change of venue" (Stats. 1898, sec. 2940) is simply to state that which is not true. The county in which the action is commenced must pay to the county in which it is tried the expenses which the last-named county is put to on account of such change, but this provision cannot justly be made a means of charging up and collecting from the first-named county any part of the expenses of holding a term, when such expenses are in no way increased or affected by the disposition made of the action in which the change of venue is had.

4. The last item to which objection is made upon this appeal is the item of fees of the clerk of the court for *Green Lake County,* allowed at $105. This is said to be an exorbi-

tant charge, and we cheerfully subscribe to the statement. The temptation to run up a large bill, regardless of law, and collect it from a foreign county, which is thought to be powerless to resist the legalized wrong, appears to have been too strong for the clerk in the present case. The original bill, as rendered by the clerk, was as follows:

| | | |
|---|--:|--:|
| Entering cause for record.............................. | $0 50 | $0 50 |
| Filing 75 papers, each.................................. | 10 | 7 50 |
| Entering 7 folios in court record, per folio.............. | 10 | 70 |
| Indexing.............................................. | 50 | 50 |
| Entering cause on calendar 2 times, each................ | 10 | 20 |
| Issuing 53 subpœnas, 43 for defense, 10 for state.......... | 15 | 7 95 |
| Filing 30 subpœnas and return.......................... | | 6 00 |
| Entering in minutes, 11 motions, 11 orders.............. | 15 | 3 30 |
| Issuing 54 witness's cert................................ | 25 | 13 50 |
| Issuing 54 receipts for cert., $13.50, and filing, $5.40...... | | 18 90 |
| Issuing 54 witness's affidavits, $13.50, and filing, $5.40... | | 18 90 |
| Indexing............................................. | 10 | 5 40 |
| Issuing 31 jurors' cert................................. | 25 | 7 75 |
| Issuing 31 receipts for jurors' cert., $7.75, and filing, $3.10 | | 10 85 |
| Issuing 4 sheriff's cert., $1; issuing 4 receipts, $1; filing, 40c.; indexing, 40c...................................... | | 2 80 |
| Issuing 2 clerk's cert., 50c.; issuing 2 receipts, 50c.; filing, 20c.; indexing, 20c...................................... | | 1 40 |
| Issuing 1 reporter's cert., 25c.; issuing 1 receipt, 25c.; filing, 10c.; indexing, 10c................................. | | 70 |
| Filing 54 attorney's statements.......................... | | 5 40 |
| Recording 11 orders, 64 folios, per folio.................. | 10 | 6 40 |
| Recording information, 3 folios, per folio................ | 10 | 30 |
| Recording minutes...................................... | | 1 00 |
| Certifying records..................................... | | 1 00 |
| Judgment roll......................................... | | 50 |
| Postage............................................... | | 50 |
| Taxing bill of costs.................................... | | 2 50 |
| Total........................................... | | $124 45 |

As before stated, it was finally allowed at $105. Just how this result was reached, does not certainly appear; but from pencil memoranda upon the original bill, as contained in the record, it seems that it was reached by disallowing two items of the bill, viz., "Issuing 54 receipts for cert., $13.50," and

"Issuing 31 receipts for jurors' cert., $7.75," making a total disallowance of $21.25, which left the bill at $103.20, and then adding $1.80 thereto, for some unexplained reason, making a total of $105.

The clerk took his office *cum onere,* and all services performed by him within the scope of his official duties are deemed to be paid for by the compensation fixed by law. *St. Croix Co. v. Webster,* 111 Wis. 270. Hence we must refer to the statute fixing the fees for the clerk of the circuit court (Stats. 1898, sec. 747), and reject all charges in the bill presented, save such as find express warrant in the law. Giving the statute a reasonable and fair construction, we can find no warrant therein for the following items:

"Issuing 54 witnesses' affidavits, $13.50." These are evidently the affidavits administered to witnesses to prove their mileage and days' attendance. The question was considered in *St. Croix Co. v. Webster, supra;* and it was held that the preparation of these affidavits was the duty of the witness, and that, if the clerk administers the oath, it is a service for the witness, and not for the state.

"Issuing 54 receipts for certificates, $13.50, and filing same, $5.40." There is no warrant in the statute for either of these charges. It is true that sec. 4060, Stats. 1898, provides that the witness who receives a certificate shall receipt for the same; but no fee is given the clerk for such receipt (as before stated, this item seems to have been disallowed by the trial court); nor is it contemplated that there shall be a filing of such receipt as a separate paper. As a matter of fact, it is well known that the practice is to keep such receipt upon the stub of the certificate.

"Issuing 31 jurors' certificates, $7.75. Issuing 31 receipts for jurors' certificates, and filing, $10.85." Both these items are palpably improper. They are simply general charges for conducting the ordinary business of the term of court for *Green Lake County,* which were in no way af-

fected or enlarged by the presence of this case upon the calendar. Even had the case been tried, it is not perceived how these items could have been charged. They were simply a part of the regular business of a jury term of court. The same remarks are applicable to the charges for sheriff's, clerk's, and reporter's certificates, amounting to $2.80, $1.40, and $.70, respectively.

"Filing 54 attorneys' statements, $5.40." These statements consist of printed certificates signed either by the district attorney or by the attorney for the defendant, each certifying that a certain named witness is entitled to a specified number of days' witness's fees and a certain number of miles of travel. We have been referred to no statutory provision requiring or even authorizing such certificates, and we have not been able to find any. They are not entitled to be filed, and hence no fee is recoverable for them.

"Judgment roll, $.50. Taxing bill of costs, $2.50." So far as we are informed, the term "judgment roll" is applicable only to civil causes. Stats. 1898, sec. 2898. As to the charge for taxation of the bill of costs, we find no warrant for it in the statute; the only charge for taxing costs authorized thereby being twenty-five cents for taxing costs in civil causes.

Our conclusion is that the bill must be retaxed in accordance with the principles laid down in this opinion. Upon such retaxation, it will be necessary to take additional proofs with regard to the mileage of Sheriff White; otherwise there seems no occasion for additional testimony.

*By the Court.*—The order affirming the taxation of costs is reversed, and the proceeding remanded with directions to retax costs in accordance with this opinion.